

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAQUELINE DEL SOCORRO JARQUIN GUTIERREZ,<br><br>    Petitioner,<br><br>    v.<br><br>TODD LYONS, ET AL.,<br><br>    Respondents. | Case No. 5:26-cv-01986-AJR<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On April 20, 2026, Petitioner Jaqueline Del Socorro Jarquin Gutierrez ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2.) Also on April 20, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction (the "*Ex Parte* Application"). (Dkt. 3.) Also on April 20, 2026, Petitioner filed an Application for Order to Show Cause Re: Preliminary Injunction. (Dkt. 4.) On April 28, 2026, Respondents Todd Lyons,

Acting Director of Immigration and Customs Enforcement ("ICE"), Ernesto Santacruz, Jr., Acting Director of Enforcement and Removal Operations ("ERO"), Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Acting U.S. Attorney General (collectively, "Respondents") filed an Answer in which they stated, "The Respondents are not presenting an opposition at this time." (Dkt. 11 at 2.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 5, 9.)  For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.

## II.

### FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the Declaration of R. Marcelo Avendano submitted in support of the *Ex Parte* Application.  (Dkt. 3-1 at 1-5.)  Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so.  (Dkt. 11.)  Accordingly, the Court considers these facts to be undisputed and conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a 51-year-old native and citizen of Nicaragua who sought protection in the United States.  (Dkt. 3-1 at 2.)  In October of 2022, Petitioner presented herself to immigration officials at the U.S. border and affirmatively requested asylum protection.  (Id.)  That was her first and only entry into the United States.  (Id.)  Shortly after her arrival, Petitioner was released from physical custody.  (Id.)  Following her release, Petitioner filed an affirmative application for asylum, which remains pending.  (Id.)  There is no indication that a final decision has ever been issued on the application.  (Id.)  Respondents have since initiated removal proceedings against Petitioner pursuant to 8 U.S.C. § 1229a, and her first master

calendar hearing before the Immigration Court in Adelanto, California, was scheduled for April 14, 2026.  (Id.)

For the nearly three and a half years following her release, Petitioner lived in liberty in the community and demonstrated full and consistent compliance with all conditions of her release.  (Id. at 3.)  Petitioner attended every scheduled check-in appointment with ICE.  (Id.)  Based on her pending asylum application, Petitioner successfully obtained an Employment Authorization Document, and pursuant to that document, secured lawful employment working in janitorial services.  (Id.)  During her time in liberty, Petitioner resided with her husband and maintained active service at a church.  (Id.)  Petitioner has no criminal history.  (Id.)  She has never been arrested, charged with, or convicted of any crime.  (Id.)

On April 1, 2026, Petitioner presented herself for a routine, scheduled check-in at the ICE field office.  (Id.)  During that appointment, and without any apparent change in circumstances, ICE officers took Petitioner into custody.  (Id.)  The re-arrest occurred without a warrant, without prior notice, and without any pre-deprivation hearing before a neutral decisionmaker.  (Id.)  At the time of her re-arrest, Petitioner was in full compliance with all conditions of her supervised release.  (Id. at 3-4.)  Following her re-arrest, Petitioner was transported to the Adelanto ICE Processing Center, where she has remained detained since April 1, 2026.  (Id. at 4.)

### III.

### SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first and second claims for relief (Grounds One and Two) contend that her re-detention without notice and a pre-deprivation hearing violated her procedural due process rights.  (Dkt. 1 at 7.)  Petitioner's third claim for relief (Ground Three) contends that Petitioner's arbitrary detention violates her substantive due process rights.  (Id.)  Petitioner's fourth claim for relief (Ground

Four) contends that her arrest without changed circumstances or probable cause violated the Fourth Amendment.  (Id. at 8.)  Petitioner seeks immediate release from custody and an order that Respondents not re-detain her or impose additional conditions unless they can assure that a neutral decisionmaker can determine at a hearing that such conditions are necessary.  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth

4

in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal

quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States in October of 2022, presented herself to immigration officials, and affirmatively requested asylum protection.  (Dkt. 3-1 at 2.)  It is further undisputed that shortly after her arrival, Petitioner was released from physical custody and that Petitioner thereafter submitted an application for asylum, which remains pending.[1]  (Id.)  It is also undisputed that Petitioner has no criminal history and demonstrated full and consistent compliance with all conditions of her release.  (Id. at 3.)  Thus, the Court concludes that once Petitioner was released from custody on conditions, she acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

---

[1] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Petitioner's liberty interest in remaining out of custody is strengthened by the several years she spent out of custody building a life for herself in the United States with her husband.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, Petitioner successfully obtained lawful employment working in janitorial services, maintained active service at church, and resided with her husband in the United States.  (Dkt. 3-1 at 3.)  Petitioner's undisputed ties to the community further strengthen her liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without notice or a pre-deprivation hearing.  (Dkt. 3-1 at 3.)  Thus, the Court concludes that Petitioner's detention by ICE on April 1, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further

concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on conditions prior to the current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral

8

arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time." (Dkt. 11 at 2.) Therefore, Respondents have consented to the relief requested by Petitioner. See C.D. Cal. L.R. 7-12.

\\

\\

\\

**VI.**

**CONCLUSION**

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on Petitioner's prior conditions of release. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's

future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **twenty-four hours from entry of Judgment**.

IT IS SO ORDERED.

DATED:   April 29, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

10